Filed 1/14/16  P. v. Middleton CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068302 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN336498) |
| JASON EDWARD MIDDLETON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Jason Edward Middleton of two counts of first degree burglary (Pen. Code, §§ 459, 460)[1] and found true allegations for each count that another person, not an accomplice, was present in the residence during commission of the burglary (§ 667.5, subd. (c)(21)). The jury also convicted Middleton of one count of possessing stolen property. (§ 496, subd. (a).)

Following Middleton's admission of a prior serious felony conviction under section 667, subdivision (d), the court sentenced Middleton to a determinate term of 11 years 8 months imprisonment, which it calculated as follows: four years for the first burglary conviction (the low term of two years, doubled under section 667, subdivision (e)(1)); two years eight months for the second burglary conviction (one-third of the middle term of four years, doubled under section 667, subdivision (e)(1)); and five years for an enhancement under section 667, subdivision (a)(1) for Middleton's prior serious felony conviction. The court also sentenced Middleton to the middle term of two years for his conviction for possessing stolen property, which the court stayed under section 654.

Middleton appeals. Middleton's appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) stating she is unable to find any reasonably arguable issues for reversal on appeal. Middleton's counsel asks this court to review the record independently for error as required by *Wende.* We granted Middleton the opportunity to file a supplemental brief

---

[1] Further statutory references are to the Penal Code.

on his own behalf. He has not responded. We have independently reviewed the record under *Wende* and found no reasonably arguable issues for reversal on appeal. We therefore affirm.

FACTS

For purposes of this section, we state the evidence in the light most favorable to the judgment. (See *People v. Osband* (1996) 13 Cal.4th 622, 690; *People v. Dawkins* (2014) 230 Cal.App.4th 991, 994.)

In the early morning hours of September 6, 2014, 16-year-old Charles S. awoke in his bedroom in Oceanside, California to see a man bending over his shelving area. Believing the man to be his older brother's friend, Charles called out the friend's name. The man did not respond. Instead, the man picked up Charles's backpack, walked up a staircase to Charles's balcony, and ran away. Charles discovered that his backpack, laptop computer, and GoPro camera were missing from his bedroom. Charles's family called police. Charles believed the man had short hair or a shaved head and was wearing a black athletic jacket with white stripes down the arms.

Sandra Wolcott lived in the same condominium complex as Charles. Later the same morning, Wolcott discovered several items missing from her residence, including a laptop computer, a tablet computer, silver flatware, and rare coins. Since her front door was locked, Wolcott believed that whoever had taken the items had entered from her balcony while she was sleeping. When Wolcott learned that another residence had been burglarized as well, she went to the police.

3

Soon after the burglaries, Colton Genereaux encountered Middleton on the beach in Oceanside. They did not know each other previously. Genereaux asked Middleton for a cigarette, and they began to talk. Middleton had a backpack with him. As they talked, Middleton removed two laptops, a tablet computer, and a GoPro camera from the backpack and examined them. Middleton was wearing a black athletic jacket (a "hoodie") with white stripes on the arms. He was very sweaty and appeared tired.

Middleton and Genereaux went to a diner to eat breakfast. Genereaux asked Middleton how he had obtained the various electronics in his backpack. Middleton said he had broken into a house. He recounted how a child had woken up and saw him when he took a laptop from one of the rooms. Middleton's story bothered Genereaux; Genereaux had experienced something similar as a child. Genereaux decided to find a way to return the stolen property to the child.

Middleton asked Genereaux if he knew anyone who wanted to buy the electronics. Genereaux said he would try to find someone. He suggested that Middleton hide the electronics somewhere. Middleton agreed. They went to a freeway overpass and hid a backpack with the electronics in a bush. Middleton and Generaux walked back towards downtown Oceanside and separated.

Genereaux went to a police resource center in downtown Oceanside. He told the police about his encounter with Middleton and the stolen electronics. As Genereaux spoke to the police, he spotted Middleton on the street outside the resource center. He told the police, who questioned Middleton and then arrested him. At the time of his arrest, Middleton had a backpack, the GoPro camera, and a black athletic jacket with

4

white stripes on the arms. With the information provided by Genereaux, the police recovered the backpack and electronics from the bush. Charles and Wolcott later identified the laptops, tablet computer, GoPro camera, and backpack as their stolen items. The police did not recover Wolcott's silver flatware, her rare coins, and some other items she reported stolen.

At trial, Genereaux, Charles, Wolcott, various law enforcement officers, and other individuals testified. Middleton did not testify. The defense questioned Genereaux's credibility and suggested he was the likely perpetrator.

DISCUSSION

As we have noted, Middleton's appellate counsel has filed a brief pursuant to *Wende, supra*, 25 Cal.3d 436, and *Anders, supra*, 386 U.S. 738, stating she was unable to find any reasonably arguable issues for reversal on appeal. Middleton's counsel has identified two possible, but not arguable, issues under *Anders*: (1) "Was the court required to instruct the jury sua sponte with CALCRIM No. 359 (corpus delicti) because the prosecution relied on [Middleton's] out of court statement that he owned the backpack, jacket, and GoPro [c]amera to prove his guilt? Since the corpus delicti instruction concerns statements of guilt by the defendant, must this instruction always be given in conjunction with CALCRIM No. 358 — which was given in this case . . . ? If error, was it prejudicial error? (*People v. Howk* (1961) 56 Cal.2d 687, 707.)" (2) "Did the court abuse its discretion by denying [Middleton's] motion, pursuant to *People v. Superior Court (Romero)* [(1996)] 13 Cal.4th [497], to strike his strike conviction?

5

(*People v. Superior Court (Alvarez)* [(1997)] 14 Cal.4th 968, 977; *People v. Williams* (1998) 17 Cal.4th 148, 162.)"

We have independently reviewed the record under *Wende* and considered the possible issues identified by Middleton's counsel. We have found no reasonably arguable issues for reversal. Competent counsel has represented Middleton in this appeal.

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

6